**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ANTHONY HARMS,** | ) | |
| and | ) | |
| **MICHAEL TUTTLE,** | ) | |
| On behalf of themselves and others similarly | ) | |
| situated, | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| **SYSCO KANSAS CITY, INC.,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiffs Anthony Harms and Michael Tuttle, and on behalf of a class of others similarly situated, by and through their attorneys, and for their Complaint for Damages against Defendant Sysco Kansas City, Inc. (hereinafter "Sysco"), and allege as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this action against Defendant for unpaid compensation and related penalties and damages. Defendant predominantly provides foodservice distribution to organizations and businesses.

2.      Pursuant to their company-wide policies and procedures, Defendant failed to pay Plaintiffs, and others similarly situated, for all hours worked and in violation of the federally mandated overtime rate.

3.      Defendant Sysco is a foodservice distributor that assigned Plaintiffs Harms and Tuttle and others similarly situated, to perform work for Sysco.

4.      Plaintiffs, on behalf of themselves and others similarly situated, bring this lawsuit as: (1) a collective action under the Fair Labor Standards Act, (hereinafter "FLSA"), 29 U.S.C. § 201 et. seq., overtime wages owed to Plaintiffs and others similarly situated.

5.      Plaintiffs' consents to be Party-Plaintiffs pursuant to 29 U.S.C. 216(b) are attached to this Complaint as Exhibit 1.

## PARTIES

6.       Plaintiff Harms is a male citizen of the United States residing in Kansas City, Missouri. Plaintiff Harms works at Defendant's place of business located in Olathe, Johnson County, Kansas.

7.      Plaintiff Harms has been employed by Defendant since on or about December 2, 2022, his hire date.

8.      Plaintiff Tuttle is a male citizen of the United States, residing in Overland Park, Kansas. Plaintiff Tuttle works at Defendant's place of business located in Olathe, Johnson County, Kansas.

9.      Plaintiff Tuttle has been employed by Defendant since on or about October 31, 2022, his hire date.

10.      Plaintiff Harms and Defendant agreed Plaintiff Harms's current hourly rate of pay would be twenty-four dollars and zero cents ($24.00).

11.      Plaintiff Tuttle and Defendant agreed Plaintiff Tuttle's current hourly rate of pay would be twenty-two dollars and thirty cents ($22.30).

12.      Others similarly situated for the purposes of this collective action, also perform and/or performed work for Defendant at Sysco as "Order Selectors" during the "Outbound" shift

at Defendant's Olathe Warehouse at any time in the last three years from the date of the tolling agreement entered on February 1, 2024, through the present.

13.     Defendant Sysco is an corporation organized under the laws of the State of Texas, whose principal office is located in Houston, Harris County, Texas.

14.     At all relevant times, Defendant Sysco was authorized to conduct business in the State of Kansas and was conducting business in the State of Kansas.

15.     Defendant had the power to hire and fire Plaintiffs and others similarly situated; supervised and controlled the work schedules and conditions of employment of Plaintiffs and others similarly situated; determined the rate and method of payment for Plaintiffs and others similarly situated; and maintained employment records (including time clock records) for Plaintiffs and others similarly situated.

16.     At all relevant times, Defendant acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

17.     This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*, as well as 29 U.S.C. §216(b).

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the alleged discriminatory conduct occurred within this judicial district.

19.     At all relevant times, Defendant has been an "employer" and a "enterprise" engaged in interstate "commerce" with gross annual dollar volume of sales made or business done of $500,000.00 or more, within the meaning of the FLSA, 29 U.S.C. §203. At all relevant times,

Defendant has employed "employee[s]," including the putative representative action Plaintiffs and those persons situated similarly to the Plaintiffs as described herein. At all relevant times, Plaintiffs and the other members of the putative collective class were engaged in commerce and/or worked for Defendant, which is an enterprise engaged in commerce.

## COLLECTIVE ACTION ALLEGATIONS

20.    Plaintiffs Harms and Tuttle held the position of "Order Selector" for Defendant and worked the "outbound" shift at the Olathe warehouse.

21.    Plaintiffs are similarly situated to all other Order Selectors who work the "outbound" shift at Defendant's Olathe warehouse because, at all relevant times, Defendant treated them all as non-exempt employees, they all shared the same or substantially similar job duties, and

22.    Defendant has failed, and continues to fail to compensate Plaintiffs Harms and Tuttle, and those employees similarly situated to them for all of their time worked.

23.    Plaintiffs, individually, and on behalf of others similarly situated, were hourly employees who were not exempt from the overtime or minimum wage provisions of the  FLSA.

24.    Plaintiffs and others similarly situated were not properly compensated for all work they performed on behalf of Defendant, and did not receive overtime compensation at the rate of one and one-half times their regular rate of pay for all hours they worked in excess of 40 hours each workweek.

25.    The FLSA requires each covered employer, such as Defendant, to compensate all non-exempt employees at a rate of one and one-half times their regular rate of pay for all hours they work in excess of 40 in a workweek.

4

26.     Plaintiffs bring Count I, the FLSA claim, arising out of Defendant' unlawful policies and practices, as an "opt in" collective action pursuant to 29 U.S.C. §216(b) on behalf of themselves and the following class:

> All persons currently and formerly employed by Defendant in the position of "Order Selector" or similar job title, who worked at the same location as the party plaintiffs, who worked the night or "outbound" shift, during the last three (3) years from the date of the tolling agreement entered on February 1, 2024, through the present, on behalf of the Defendant.

27.     Plaintiffs, individually and on behalf of others similarly situated, seek relief on a collective basis challenging Defendant's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendant's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

28.     Count I is brought by Plaintiffs on behalf of themselves and others similarly situated, seeking relief on a collective basis challenging, among other FLSA violations, Defendant's practice of failing to accurately record hours worked by the Plaintiffs and by others similarly situated and Defendant's practice of failing to pay Plaintiffs and others similarly situated for all hours worked at a proper, legal rate, including overtime compensation. The number and identity of other Plaintiffs yet to opt-in and consent to be Party-Plaintiffs may be determined from the records of Defendant, and potential Party-Plaintiffs may easily and quickly be notified of the pendency of this action.

29.     Maintenance of this action as a collective action is a fair and efficient method to resolve this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. Furthermore, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent

adjudications, while a collective action can determine the rights of all members of the collective class in conformity with the interest of efficiency and judicial economy.

## GENERAL ALLEGATIONS

30.    At all relevant times, Defendant utilizes a computerized system which tracks the exact time an hourly employee clocks in and clocks out of work.

31.    Even though Defendant maintained a system which records, to the minute, the time an employee clocks-in and clocks-out, Defendant would go into the system and change the clock-in and clock-out times to inaccurately reflect less time an employee worked. Additionally, employees were instructed to clock in and out in order to work without hours being recorded.

32.    Defendant's policy and practice of changing the time records and requiring employees to work off the clock resulted in the failure to compensate Plaintiffs and others similarly situated properly for all the time they have actually worked, and resulted in them not receiving overtime compensation at the rate of one and one-half times their regular rate of pay for all hours they worked in excess of 40 each workweek. For example:

a.    Plaintiffs and others similarly situated were required to come in 20-30 minutes before they were allowed to clock in for their shift to perform pre-shift inspections, attend a meeting, and to retrieve equipment pallets needed for the shift.

b.    Plaintiffs and others similarly situated were required to clock out before the conclusion of their last work duty, and after clocking out, they were required to deliver their last batch, return equipment, do inspections, and sign equipment back into the shop while off the clock. This process usually took 20minutes.

33.     The work activities Plaintiffs and others similarly situated to them were required to perform prior to clocking in were integral and indispensable to their principal activities, because they were closely tied to, and necessary for the primary activities they were employed to perform.

34.     The work activities Plaintiffs and others similarly situated to them were required to perform prior to clocking in, or after clocking out were neither *de minimis* nor merely preliminary or postliminary to their principal activities.

35.     Although Plaintiffs and others similarly situated to them regularly worked in excess of 40 hours per workweek for Defendant, they have not received overtime compensation at the rate of one and one-half times their regular rate of pay for all such time they worked.

36.     In orientation training, James Brookes, the warehouse manager, (hereinafter "Manager Brookes") and Dominic Cates, the trainer (hereinafter, "Trainer Cates") scolded an employee at a pre-shift meeting for clocking in upon arrival at the warehouse, instead of after the meeting when his shift was scheduled to begin. Manager Brookes informed this employee, and all others, that their time would be altered to reflect a start time after the conclusion of the pre-shift meeting if they clocked in upon their arrival at the warehouse.

37.     On or about January 20, 2023, Plaintiff Tuttle expressed his concern for these policies in a meeting with a corporate representative, Lisa Tolle, and the Human Resources Manager.

38.     Plaintiff Tuttle was informed that the discrepancy would be corrected, however it was not.

39.     Upon information and belief, Defendant's illegal wage policies remain in effect.

40.     Defendant has no good faith basis for their policy and practice of changing the work time of Plaintiffs and others similarly situated because their clock record system accurately records at least to the minute the actual clock-in and clock-out times.

41.     Defendant has no good faith basis for their policy and practice of instructing employees to work off the clock up to an hour a day.

42.     Defendant had actual or constructive knowledge that that Plaintiffs and others similarly situated to them were performing work for which they were not being properly compensated because Defendant's managers specifically directed Plaintiffs and other similarly situated employes to perform compensable work activities before and after they were clocked in for their shifts, and actually observed them doing so.

43.     Defendant's policies, practices, and/or procedures are designed to intentionally avoid paying their employees for all such hours worked.

44.     Defendant's failure to pay their employees for all unpaid time has resulted in Plaintiffs and others similarly situated being regularly and willfully denied overtime compensation under the FLSA.

## COUNT I – FLSA CLAIM

45.     Plaintiffs re-allege and incorporate by reference each and every allegation and averment set forth in this Complaint as though fully set forth herein.

46.     At all times material herein, Plaintiffs and others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, et seq.

47.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in

the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a); 29 U.S.C. §207(a)(1).

48.     Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce or in the production of goods for commerce, and handling, selling or otherwise working on goods or materials that have been movid in or produced for interstate commerce.

49.     Defendant provided foodservice distribution services at a warehouse in Olathe, Kansas.

50.     Defendant has an annual gross volume of business in excess of $500,000.

51.     Defendant is an enterprise acting "for a common business purpose" distributing foodservice and food at wholesale to restaurants, healthcare facilities, governments, and schools and education systems.

52.     Further, Defendant routinely bills entities outside the state of Kansas for services rendered.

53.     Defendant has no published restriction stating Defendant will only service vendors from the state of Kansas.

54.     Plaintiffs and others similarly situated engaged in commerce.

55.     Plaintiffs and others similarly situated provided services for customers who reside throughout the Midwest.

56.     At all relevant times to this action, Defendant was the "employer" of Plaintiffs and others similarly situated within the meaning of the FLSA. 29 U.S.C. §203(d).

57.     At all times relevant to this action, Plaintiffs and others similarly situated were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. §203(e).

58.    Plaintiffs and others similarly situated are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiffs and others similarly situated must be paid minimum wage in accordance with 29 U.S.C. § 206.

59.    Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of forty (40) hours in a workweek. 29 U.S.C. §207(a).

60.    Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) apply here.

61.    Defendant violated the FLSA by failing to pay Plaintiffs and others similarly situated an overtime premium equivalent to one and one-half their regular rate of pay for all hours they worked in excess of 40 each workweek.

62.    Specifically, as discussed above, Defendant utilizes an unlawful clock-in and clock-out policy and procedure that forces employees to work off-the-clock without being paid at the legal and applicable wage rates.

63.    Plaintiffs and others similarly situated are victims of uniform and facility wide compensation policies. Upon information and belief, Defendant is applying the same unlawful compensation policies to others similarly situated who performed work on behalf of Defendant.

64.    Defendant's practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked.

65.    Plaintiffs and others similarly situated are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding February 1, 2024, through the present, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether their conduct was prohibited by the FLSA.

66.     Defendant has acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and others similarly situated are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum and overtime wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay overtime compensation for all hours worked in excess of 40 each workweek, Plaintiffs and others similarly situated are entitled to an award of prejudgment interest at the applicable legal rate.

67.     Plaintiffs, on behalf of themselves and others similarly who compose the putative class, seek damages in the amount of all respective unpaid overtime premium pay for work performed in excess of forty (40) hours in a workweek, plus liquidated damages, as provided by the FLSA, 29 U.S.C. §216(b), and such other legal and equitable relief as the Court deems just and proper.

68.     Plaintiffs, on behalf of themselves and others similarly situated who compose the putative class, seek recovery of all attorney fees, costs, and expenses of this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. §216(b).

WHEREFORE, Plaintiffs, on behalf of themselves and all proposed class members, pray for relief as follows: (a) Designation of this action as a collective action on behalf of the proposed putative class members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all putative class members (the FLSA opt-in class), apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents To Join pursuant to U.S.C. §216(b); (b) Designation of Plaintiffs as Representative Plaintiffs, acting for and on behalf of the putative collective class members; (c) An award of damages for unpaid and

overtime wages due for Plaintiffs and the putative class; (d) An award of liquidated damages, to be paid by Defendant; (e) An award of pre-judgment and post-judgment interest, as provided by law; (f) An award of costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees; and (g) Any and all such other and further relief as this Court deems necessary, just and proper.

## DEMAND FOR BENCH TRIAL

Plaintiffs hereby demand a bench trial on all causes of action and claims with respect to which Plaintiffs and all members of the proposed representative action have a right to a bench trial.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs hereby designate the United States District Court for the District of Kansas, in Kansas City, Kansas, as the place of trial.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: /s/     Ryan M. Paulus
Ryan M. Paulus          KS 27293
r.paulus@cornerstonefirm.com
M. Katherine Paulus   KS 23866
m.paulus@cornerstonefirm.com
Drew M. Russell        DKan 79133
d.russell@cornerstonefirm.com
Kansas City, Missouri 64151
Telephone              (816) 581-4040
Facsimile              (816) 741-8889

**ATTORNEYS FOR PLAINTIFFS**